UNITED STATES OF AMERICA,

      Plaintiff,

v.                                  CASE NO.:  6:25-cr-00107-JA-LHP

IRIS YANETH VILLAFRANCA,

      Defendant.

_____/

## SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE

**COME NOW,** the Defendant, **IRIS YANETH VILLAFRANCA**, by and through his undersigned counsel of record, Rick L. Jancha, and respectfully submits this Sentencing Memorandum pursuant to Rule 32 of the Federal Rules of Criminal Procedure.  Mr. Villafranca requests this Court impose a downward variance pursuant to the 18 U.S.C. § 3553.

### I.      INTRODUCTION

Iris Yaneth Villafranca (Villafranca) is a 48 year old single parent who left Honduras at age 16 due to familial physical/sexual abuse and came to the United States in hopes of a better life.  Unfortunately, as a result of her own terrible decision to participate in the current offenses she now finds herself facing yeas of

1

incarceration, followed by deportation to Honduras where her future will be uncertain and danger to her own personal safety.

Despite her poor choices and precarious future, Ms. Villafranca remains an individual capable of redemption and one that is worthy of mercy from this Court. For these reasons and others stated herein, a significant downward variance is sufficient but not greater than necessary to meet the purposes of 18 U.S.C. §3553(a).

II. **<u>MITIGTING FACTORS IN MS. VILLAFRANCA'S HISTOSRY AND CHARACTERISTICS THAT JUSTIFY A SENTENCE ELOWTHE GUIDELINES</u>**

The United States Probation Office has identified certain factors that may warrant a sentence below the advisory guideline range. They have identified Ms. Villafranca's history and characteristics (limited criminal history) and the collateral consequences of her conviction (deportation and forfeitures) PSR at 191. Ms. Villafranca agrees with the assessment and asserts there are also other factors that justify a downward variance.

Pursuant to *United States v. Booker,* 543 U.S. 220, 245-67 (2005), a sentencing court is now unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States,* 552 U.S. 38, 53 (2007)(quoting *Koon v. United States,* 518 U.S. 81 (1996)).

In order to satisfy § 3553(a), and ensure "that the punishment will suit not merely the offense but the individual defendant [,]" this Court is free to consider " the widest possible breadth of information about" Mr. Villafranca. *Pepper v. United States,* 562 U.S. 476, 488 (2011); *see also* 18 U.S.C. § 3661. The Guidelines are "effectively advisory" and constitute only "one factor among several [that] courts must consider in determining an appropriate sentence. *Kimbrough v. United States,* 552 U.S. 85, 90 (2007) (quotation marks removed). Stated differently, a district court is "not bound" by the Guidelines including their provisions (repealed in 2025), addressing when departures from the otherwise-applicable Guidelines range are appropriate. *See United States v. Strother,* No. 24-4291, 2026 U.S. App. LEXIS 190, at *5, n.1 (4th Cir. Jan. 6, 2026)(citing *Booker* and U.S.S.G. Ch. 1, Pt. A; U.S.S.G. App. C, amend. 836).

**A. <u>Unusually Disadvantaged Childhood / Early Adult Life</u>**

*"Pre-Booker*, ´[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing´ were not considered relevant grounds for downward departure….[p]ost-Booker, however, [a Defendant's] childhood and lack of education are relevant under § 3553(a)(1) with regard to Defendant's history and characteristic." *United states v. Mapp*, No. 05-80494, 2007 U.S. Dist. LEXIS 9381, 2007 WL 485513, at *14-15 (E.D. Mich. Feb. 9, 2007). In fact, courts have stated that an "unusually disadvantaged childhood" is a potential mitigating circumstance.

*See Spears v. United States*, 555 US. 261, 263 (2009); *Unite States v. Burney,* 992 F.3d 398, 400 (5ᵗʰ Cir. 2021).

Ms. Villafranca's childhood and early adult life can only be described as horrendous and one of torture and sexual abuse.  Her natural father passed away when she was 4yeears old  When she was 7 years old her mother bean cohabitating with Jose Balthazor Espinal. (PSR at 151).

Her mother was physically abusive and beat her with wires until she bled.  She was also sexually abused by Jose at night.  When Ms. Villafranca informed her mother  of the sexual abuse, her mother did not believe her and threatened to kill her if she left. When growing up she was never allowed to attend school and had to sell fruit starting at age 7 in order to earn money for food.  (PSR at 155).  Ms. Villafranca ran away and lived with her maternal aunt for a short while.  (PSR at 153).  While at her maternal aunt's house, she was sexually abused by her uncle. (PSR at 154).

At age 16 she move to Mexico for a few months.  In 1993 she moved to California, still the age of 16, and was homeless.  She met Jose Orellao, who she moved in with because it was a place to stay.  In 2001, at age 24, she moved to Central Florida. (PSR at 156).  Mr. Orellana was an alcoholic, used drugs and was abusive towards her. (PSR at 157).  She eventually married Antonio Rodriguez and they were later divorced. (PSR at 158).

Ms. Villafranca's childhood and adult life has been one of constant turmoil and abuse. This history has greatly affected her life and opinion of her self worth.

Ms. Villafranca believes that the physical and sexual abuse is always on her mind . It has affected her life and her relation with others. It also has affected how she feels about herself . She has always felt that she has had to "put up a front" and be strong for others. (PSR at 163).

**B. <u>Strong Family Ties</u>**

Courts have specifically identified strong family and community support as a basis to vary downward from the guidelines. *See e.g United States v. Saad,* 589 F.3d 1110, 1118 (10th Cir. 2009) (district court was affirmed on appeal after considering, *inter alia,* the defendant's "close-knit" family and community in the granting of a downward variance to a probationary sentence); *United States v. Wachowiak,* 496 F.3d 744, 746 (7th Cir. 2007) (district court's downward variance was found not unreasonable where that court found, *inter alia,* that the defendant's "supportive family and friends would assist in his rehabilitation").

Ms. Villafranca has an extremely close-knit family. She has 4 children who are very supportive of her. One of her sons (Anthony) has a learning disability and was living with her along with her daughter, Iris and her family at the time of her arrest. The home they were living in has been subject to forfeiture due to the instant case. Letters from her family and friends are attached as "Exhibit A".

## C. <u>Deportation</u>

As reflected in the PSR, Ms. Villafranca is subject to possible deportation to Honduras after her release from custody (PSR at 191). Deportation back to Honduras carries the potential for serious physical harm.

Honduras itself is very unstable country with corruption and a serious crime problem. See Attached Department of State travel advisory for Honduras which is attached hereto as "Exhibit B".

This Court "has the authority to consider the possibility of a defendant's deportation as a mitigating factor, or as an aggravating factor, when arriving at an appropriate sentence." *Oboh v. United States,* 769 F. Supp. 3d 796, 839 (E.D. Tenn. 2025); *see also United States v. Perez-Garcia,* 191 F. App'x 389, 392 (6th Cir. 2006) (observing that the district court, when it explained its reasons for imposing the defendant's sentence, considered his deportations and his family circumstances); *United States v. Tillett,* 269 F. App'x 792, 797 (10th Cir. 2008) (noting the district court's authority to balance a defendant's "family circumstances" and "future deportation" when weighing "other sentencing variables under § 3553(a)").

In this case, deportation of Ms. Villafranca contains specific dire consequences for her. Approximately 11 months ago her brother, Miguel Villafranca Oseguera was killed by the Honduras police after he made a complaint against them. When she attended her brother's funeral in Honduras, she was advised

that her life was also in danger due to her brother's complaint against law enforcement. (PSR at 152).

**D. <u>Need to avoid unwarranted sentencing disparities among defendants with similar records and have been found guilty of similar conduct</u>**

The Courts have stated that when evaluating sentencing disparities, we ask "whether the defendant is similarly situated to the defendants to whom he compares himself". <u>United States v. Duperval</u>, 777 F3d 1324, 1338 (11th Cir. 2015). Without more information on those other cases a defendant cannot show that those "other defendants" are similarly situated to him. <u>United States v. Decampo</u>, 573 F3d 1091, 1101 (11th Cir. 2009) ("a well-founded claim of disparity … assumes that apples are being compared to apples.")

This standard of "comparing apples to apples" is, we respectfully submit, a difficult task for any defendant. One cannot show an "apple to apple" comparison between defendants without obtaining a copy of the other defendant's charges, stipulated facts in their plea agreement and most crucially a copy of their presentence report to examine all criminal history and guideline applications. Courts have the ability to review the PSR' of co-defendants. <u>United States v. Styles</u>, 0-13321 (11th Cir. Sept 07, 2021). Ms. Villafranca does not have access to co-conspirators PSR's so exact comparison of cases is impossible.

**What counsel has been able to ascertain from the docket sheets of related cases:**

<u>**Case No: 6:25-cr-114-JA-LHP**</u>

Michael Mayorga:  Conspiracy to Defraud the United States
18 U.S.C. § 371, 5 year maximum sentence (D-1);
Plea Agreement: Government caps sentencing
Recommendation at 46 months (D-7);
Pled guilty: 5/22/2025 (D-27);
Substantial Assistance Moton: filed on 3/19/2026 –
  3-level reduction (D-58)

Francisco Alvarz Jr.:  Conspiracy to Defraud the United States
18 U.S.C. § 371 (D-1)
Plea Agreement: Government caps sentencing
Recommendation at 37 months (D-6);
Pled guilty: 5/22/2025 (D-19);
Substantial Assistance Moton: filed on 3/19/2026 –
  3-level reduction (D-55)

<u>**Case No: 6:25-cr-107-JA-LHP**</u>

Mario Lisandro Flores Moradel:  <u>Count One</u>:  Conspiracy to operate unlicensed money
Transmitting business 18 U.S.C. § 371
5-year minimum sentence
<u>Count Two</u>:  Conspiracy to defraud the United States
18 U.S.C. § 371
5-year minimum sentence (D-25)
Plea Agreement: Counts 1 & 2 (D-165)
Pled Guilty:  3/23/2026 (D-166)

Osman Donaldo Zapata:  Conspiracy to operate unlicensed money transmitting
business 18 U.S.C. § 371
5-year minimum sentence (D-25)
Plea Agreement: Counts 1 (D-130)
Pled Guilty:  3/23/2026 (D-135)

A noted above, 3 of the co-conspirators have pled guilty to 18 U.S.C. § 371 charges with a maximum exposure of 5 years incarceration. Mr. Moradel has pled to 2 counts, each being a violation of 18 U.S.C. § 371 for maximum exposure of 10 years.

Counsel for Ms. Villafranca recognizes that the government is vested with basically unfettered discretion in the selection of charges that are filed and the resolution of those charges. This Court, however, is vested with the oversight powers to ensure that those decisions do not lead to unequal treatment of similarly situated defendants as a result of sentencing disparities.

It is clear from the record that Michael Mayorga and MZA were main organizers and leaders without whom these crimes could not have taken place. Mr. Mayorga and MZA were instrumented in setting up the shell companies used in the case. MZA and others were signatories on the bank accounts and were authorized to deposit checks and withdraw cash (D-48). Ms. Villafranca was not. (D-48)

(a) Mayorga ran a tax preparation and bookkeeping business named "Michael Mayorga Accountant.: Villafranca and M.Z.A. caused Floria, F.A., E.A.Z.M., O. Zapata, and Oseguera to have Mayorga prepare the shell companies' tax returns and tax-related documents.

(b) Mayorga provided bookkeeping services to the shell companies and used the records he created to prepare and cause the filings of false tax documents with the IRS.

(c) The conspirators made minimal employment tax deposits to create the appearance that the shell companies were operating legitimately and conceal their fraud scheme from the IRS.

(d) Mayorga knew the shell companies were withdrawing thousands of dollars in cash from their bank accounts, which he falsely reported as "Outside Sourcing" or "Outside Services" on the Forms 1120-S for the shell companies. Knowing that these funds were actually paid as wages, Mayorga told the shell company

9

owners to sign letters stating that the funds had been used in a certain way. Mayorga knew these letters were false when he told the shell owners to sign them.

(e) The conspirators filed and cause the filing of false individual income tax returns with the IRS to create the appearance that the shell companies were operating legitimately and concealed their fraud scheme from the IRS. (D-77).

Mr. Mayorga along with Ms. Villafranca, and MZA promoted and carried out the schemes to defraud workers compensation insurance companies. (D-86). The workers compensation scheme only worked due to Mayorga's manipulating the documents and number of employees. Clearly, this scheme could not have been carried out without Mayorga's expertise

and active involvement.

Mayorga only faces a 5 yar maximum with a capped recommendation of 46 months and 3 level substantial assistance motion. The disparity in the time faced by Mayorga compared to Ms. Villafranca is astonishing and unfathomable at best.

## II.  Objections to PSR

### A. Organizer / Leader Enhancement

PSR at 127  Ms. Villafranca has been given a 4 level enhancement for role in the offense.  The PSR is replete with the crucial roles played by Mayorga and MZA.  They were to true actual organizers and leaders of the offenses.  Ms. Villafranca's role was that of a manager or supervisor of the offenses handling the functioning of the scheme set up by MZA and Mayorga.  Counsel respectfully suggest that she in actuality should only be

scored a 3 level enhancement under US.S.G. § 3B 1.1(b).

**B. <u>Obstruction to Justice</u>**

PSR at 128  a meeting was held by co-conspirators to discuss the receipt of a grand jury subpoena. Mr. Mayorga directed the response and the creation of false documents to be supplied to the Grand Jury. Ms. Villafranca had extremely limited involvement in the decision in what to supply, or any decision to supply false document so this obstruction enhancement should not be applied to her.

<b>CONCLUSION</b>

For all the above referenced reasons, Ms. Villafranca respectfully requests this Court to consider granting a downward variance from the sentencing guidelines when imposing sentence in this case.

*Respectfully submitted*,

*/s/ Rick L. Jancha*
**Rick L. Jancha, Esquire**
Florida Bar Number: 973394
**Law Office of Rick L. Jancha, P.A.**
2329 River Ridge Rd. Apt. 11
Deland, FL 32720-4343
Office: 407-580-7968
Primary E-mail: rick.jancha@gmail.com
Attorney for Iris Yaneth Villafranca

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 29th day of March 2026, I electronically

filed the foregoing, with the Clerk of the Court, by using the CM/ECF system,

which will send a Notice of Electronic Filing to all counsel of record.

> */s/Rick L. Jancha, Esquire*
> Rick L. Jancha, Esquire
> Florida Bar Number 0973394
> **The Law Offices of Rick L. Jancha, P.A.**
> 2329 River Ridge Road Unit 11
> DeLand, Florida 32720
> Telephone: (407) 580-7968
> E-mail: rick.jancha@gmail.com
> Attorney for Iris Yaneth Villafranca

05/01/25

To Whom It May Concern,

I'm writing to ask for my mom, to be released. She's always been there for me, providing love, guidance, and support through everything. Her presence in my life is something I rely on, and it's hard to go through each day without her.

She's the person who keeps me grounded and helps me feel safe. I believe she needs to come home and be there for the people who need her. What she brings to our family can't be replaced.

Myself and a lot of people relay on my mother for support and guidance in their lives. She makes sure everyone around her is loved and supported. She not just my mother, she is a mother figure to many people in her life.

I appreciate you taking the time to consider this, and I hope you understand how important it is for me to have my mom back.

Sincerely,
Anthony Rodriguez

Exhibit A

May 1, 2025

Valerie Rodriguez
5214 Mahogany Drive
Mount Dora, FL 32757
407-492-5918
Valerierodriguez597@gmail.com

RE: Character Reference for Iris Villafranca
Case NO. 6:25-cr-107-JA-UAM

To Whom it May Concern:

I am writing this letter to provide this letter to provide a character reference for my mother, Iris Villafranca. She has always been a deeply compassionate, responsible, and nurturing person. I understand that she is currently involved in a legal matter, and i wanted to offer my sincere testimony to her character and the positive role she plays in the lives of those around her.

As her "wild" child, I've witnessed firsthand her dedication to our family and her unwavering support for her friends, neighbors, and even strangers in need. I was always the most rebellious out of all my siblings, especially as a teenager. Even when I treated her the worst, she was always there for me and never left my side. She made it well known that she would never leave my side. To this day I feel guilty for not acknowledging how blessed I am to have such a caring and supportive mother that has sacrificed so much not only to myself but for all my other siblings. She has always shown unconditional love no matter what someone else has done for her.

My mother has taught me by example what it means to be respectful, selfless, and to have manners. From my earliest memories, my mother has been the cornerstone of our family. She is a woman of extraordinary kindness, patience, and emotional strength. She has always placed the well-being of others above her own. She always gave of herself without hesitation or expectation of recognition. I've seen her offer rides to those without transportation and provide a comforting presence to families going through difficult times. Her door is always open, and her heart even more so.

I do not seek to minimize the seriousness of the situation; however, I respectfully ask that you consider the full measures of her character- a woman who has dedicated herself to serving and supporting others, who has never turned her back on a person in need, that she will meet any expectations placed upon her with sincerity and humility. She is someone who learns from life's challenges and strives to be better not only for herself, but everyone who relies on her.

She is my rock, and my biggest supporter. She has been the best mother to my siblings and I. Thank you for considering this letter and for allowing me the opportunity to speak on behalf of someone I love and truly admire so deeply.

To Whom it may concern,

My Name is Reynaldo orellana. I am the oldest son of Iris Villafranca. I am writting this letter to speak on behalf of the kind, loving, and genuine person my mother is. Her everlasting impact has and continues to reflect on every life she has touched. My mother is a god fearing individual who connects other individuals in the name of Jesus.

Iris villafranca is not only a woman. She is a mother, lover, protector, sister, daughter, leader and the rock to my family. I ask that you please consider allowing my mother to work through this legal process with her family and support system. My mother is the back-bone to our family and 2nd mother to all of my friends and peers. My mother has a great connection to our community and all those who cross her path. We just lost our uncle this past thanksgiving. As a family the matter has deeply impacted and affected us all. Although my mom continues to remain strong for the entire family.

If released, I know my mother would be fully compliant with the court. I can assure she will do everything in her power to make this right.

Sincerely,
Reynaldo orellana

May 1, 2025

To Whom It May Concern:

Re: Character Reference for Iris Villafranca
Case No. 6:25-cr-107-JA-UAM

My name is Iris Orellana, and I am writing as the daughter of Iris Villafranca. I am honored to share my perspective on her character and the kind of person she is, based on a lifetime of knowing and loving her.

My mother has always been the heart and strength of our family. She has carried both the role of a mother and a father, raising us with unwavering love, discipline, and sacrifice. Even during the most difficult times, she remained our source of stability, always putting our needs before her own. Her resilience and devotion have given us a foundation of love and security that we continue to rely on.

Beyond our family, my mother is known as a kind, generous, and compassionate person in her community. She is the type of person who shows up without being asked—whether it's helping someone in need, cooking for a sick friend, or simply offering her time and support to those around her. Her actions have always reflected a genuine care for others.

She is deeply loved and respected by those who know her. Her presence in our lives has always been one of guidance, support, and encouragement. She has taught us the importance of responsibility, kindness, and perseverance, values that continue to shape who we are today.

This situation has been incredibly difficult for our family, and her absence is deeply felt every day. I respectfully ask that the Court consider the person she truly is—someone who has dedicated her life to caring for others and who continues to be a source of strength and love to her family.

Thank you for your time and consideration.

Respectfully,

05/01/25

To Whom It May Concern,

My name is Serena Trevino and I am related to Iris because she is my aunt. My aunt was the embodiment of quiet strength and unwavering respect, treating everyone she encountered with kindness and dignity regardless of their status or situation. Even in the face of hardship, she remained grounded and humble, never seeking praise for her sacrifices or accomplishments. Her humility wasn't just in words. it showed in how she lived her life, always putting others before herself and never boasting about what she had overcome. She carried herself with grace, listening more than she spoke and offering support without judgment, which earned her the deep respect of those who knew her.

As a single mother, my aunt raised her children with an extraordinary sense of love, discipline, and integrity. She worked tirelessly to provide for them, never letting her own struggles interfere with their happiness or opportunities. Her values shaped the way she parented: instilling respect, responsibility, and compassion in her children, who have grown into admirable adults because of her guidance. Despite facing many challenges alone, she never complained, and instead embraced her role with quiet resilience. Her character rooted in humility, strength, and unwavering love remains an inspiration to all who had the privilege to know her. Given the actions she has reportedly committed , If she has a chance to go back in time and not do it. I know she would not do it. As she does not any malicious intent or malice to hurt anyone. She has never displayed any of those traits growing up and still has not.

Sincerely.
Serena Trevino

To whomever it may concern,

I first met Iris Villafranca 15 years ago when I was twelve years old. I had just started middle school and became best friends with her son Reynaldo. Since that day, Iris has been like a second mother to me. She has always taken care of me no matter what I needed or what was going on in my life. She has always treated me like her own, from making sure I was fed, to showing up to my football games. So many memories come to mind when I think of what an amazing person Iris is. She was a shoulder to cry on when my dad suffered a heart attack and again when he had a stroke. She never hesitated when I needed a place to stay and when I had no car, she took me to and from work. I believe anyone who has met her can attest to her integrity. She has always put others, especially her family, before herself. If anyone is in need or is going through a rough time, you can count on Iris to be there for you. Iris is a selfless and incredible mother to her four wonderful kids, Reynaldo, Iris, Valerie, and Anthony. She has raised them to be honest, successful, and dependable young adults who I couldn't imagine my life without. My life, as well as many others, has been positively affected by the impact that Iris has made with her kindness and compassion. I truly believe that this world is a better place with Iris Villafranca in it.

Sincerely,

Colin Crowgey

Date: 05-01-2025

My name is Gloria Trevino Brown age 70. I am retired after 45 years of service with Los Angeles County in the State of California. I live in Southern California at 3081 E. Silver Sky Drive, Ontario Ranch. Married, have two wonderful adult daughters. The youngest lives at home applying for her Master's degree in the Fall 2025 at Azusa Pacific University. I was asked to write a Character Letter.

My relationship with Iris Villafranca is she's my youngest daughter's aunt. I was made aware of her serious offenses and probable charges to my sincere disbelieve and surprise. This is not the person I've come to know. I plead with the Court, the Judge, and the Federal Government Bureau of Investigation for a lighter sentence and consideration of Iris Villafranca having No past criminal history to be considered in her sentencing and she being filled with remorse and regrets her actions. What I do know of Iris is she's a kind,,loving person and trusting of people to a fault.

Respectfully,
Gloria Trevino Brown
(562) 360-3493

## Honduras
Republic of Honduras

❎

*Reconsider travel to Honduras due to **crime**. Read the entire Travel Advisory.*

Do not travel to:

- Gracias a Dios Department, most eastern department, due to **crime**.

**Country Summary**: Violent crime, such as homicide, armed robbery, and kidnapping, remains common. Violent gang activity, such as extortion, violent street crime, rape, narcotics, and human trafficking, is widespread. Local authorities may lack sufficient resources to respond effectively to serious crime incidents. Around resort areas in the Bay Islands, which include Roatan, Utila, and Guanaja, there is a concentration of resources, and these areas are better policed.

Demonstrations occur regularly throughout the country and can be about a variety of political or economic issues. Protests, demonstrations, tire burnings, and roadblocks are frequent, unpredictable, and can turn violent. They can shutdown roads and highways, often without prior notice or estimated reopening timelines.

In December 2022, the Government of Honduras declared a "State of Exception" in response to high levels of extortion and other crimes. The declaration remains in effect and has been modified to include more cities. It allows the police to suspend constitutional rights in 226 of the country's 298 municipalities.



The Honduran Ministry of Health declared in Ju[ne] a national emergency in Honduras due to an increase in dengue cases. The Ministry of Health has carried out dengue prevention, control, and surveillance activities, along with the promotion of preventive measures through the media and educational campaigns. It also carried out clean-up operations and campaigns, including the use of chemical and biological agents for vector control.

*Exhibit B*

Please review the <u>U.S. Centers for Disease Control and Prevention</u> ⬈(CDC) website and <u>CDC Global Dengue</u>⬈ for further information.

Read the <u>country information page</u> for additional information on travel to Honduras.

If you decide to travel to Honduras:

- Avoid demonstrations.
- Be aware of your surroundings.
- Avoid walking or driving at night.
- Do not physically resist any robbery attempt.
- Be extra vigilant when visiting banks or ATMs.
- Do not display signs of wealth, such as wearing expensive watches or jewelry.
- Do not take public transportation, including white car taxis. U.S. government personnel and their family members are prohibited from using these forms of transportation.
- Monitor local media for breaking events and be prepared to adjust your plans.
- Visit our website for <u>Travel to High-Risk Areas</u>.
- Enroll in the <u>Smart Traveler Enrollment Program (STEP)</u> to receive Alerts and make it easier to locate you in an emergency.
- Follow the Department of State on <u>Facebook</u>⬈ and <u>X/Twitter</u> ⬈.
- Review the <u>Country Security Report</u> for Honduras.
- Prepare a contingency plan for emergency situations. Review the <u>Traveler's Checklist</u>.
- Visit the CDC page for the latest <u>Travel Health Information</u>⬈ related to your travel.

**Gracias a Dios Department – Level 4: Do Not Travel**

U.S. government personnel and family members are restricted from traveling to Gracias a Dios, the most eastern department. The department is an isolated region with high levels of criminal activity. Narcotics trafficking is widespread, and large portions of the department are particularly vulnerable to drug trafficking organizations. Infrastructure is weak, government services are limited, and police and military presence is scarce.

Visit our website for <u>Travel to High-Risk Areas</u>

## Embassy Alerts Messages

Demonstration Alert: Possible Demonstration January 08, 2026    Thu, 08 Jan 2026

Demonstration Alert: Planned Demonstration at U.S. Embassy Tegucigalpa (December 23, 2025)    Tue, 23 Dec 2025

Alert: Security During Upcoming National Elections    Mon, 24 Nov 2025

WEATHER ALERT: Elevated Risk of Flooding in Western Honduras    Wed, 01 Oct 2025

View Alerts and Messages Archive

## Quick Facts

**PASSPORT VALIDITY:**

Passport must have six months validity.

**BLANK PASSPORT PAGES:**

One page required for entry stamp.

**TOURIST VISA REQUIRED:**

No for stays of up to 90 days.

**VACCINATIONS:**

Required: Honduras currently requires travelers arriving from or traveling to Panama and every nation in South America to present proof of yellow fever vaccine. Travelers are no longer required to provide proof of vaccination against COVID-19 or negative test results for a PCR, Antingen, or ELISA test prior to entry in to Honduras. Airlines may still require additional documentation prior to boarding. Suggested:

boarding. Suggested:
measles, rubella, rabies,
hepatitis A, hepatitis B,
typhoid.

**CURRENCY RESTRICTIONS FOR ENTRY:**

Travelers must declare any amount over $10,000.

**CURRENCY RESTRICTIONS FOR EXIT:**

Travelers must declare any amount over $10,000.

ALL +/—

Embassies and Consulates ⊕

Destination Description ⊕

Entry, Exit and Visa Requirements ⊕

Safety and Security ⊕