UNITED STATES OF AMERICA

v.                                              CASE NO. 6:25-cr-00107-JA-LHP

OSMAN DONALDO ZAPATA

## UNITED STATES' SENTENCING MEMORANDUM

Defendant Osman Donaldo Zapata was a shell company owner in a seven-year illegal, off-the-books cash payroll scheme. As a part of the scheme, Zapata and his conspirators (1) ran an unlicensed check cashing and cash courier service business that unlawfully cashed approximately $89 million for subcontractors working in the construction industry; (2) defrauded the Internal Revenue Service out of millions of dollars of income and employment taxes by creating an off-the-books cash payroll for the subcontractors, making it look like the required federal taxes were being paid, and concealing the scheme; (3) defrauded workers' compensation insurance providers by providing them with false and fraudulent information about, among other things, the number of workers being covered by the workers' compensation insurance and the amount workers would be paid.  The total actual tax loss associated with the scheme is approximately $38 million.

On April 23, 2025, Zapata was charged by Indictment with one count of conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 371, 1960(b)(1)(A), 1960(b)(1)(B), 1960(b)(1)(C), and one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  (Doc. No.

1

25.) Zapata pleaded guilty to one count of Count One of the indictment (conspiracy to operate an unlicensed money transmitting business), and he stipulated to all the conduct described in Count Two. The United States recommends this Court sentence Zapata to a Guidelines term of imprisonment of 60 months, followed by a term of supervised release if he is not removed from the United States. Such a sentence is sufficient, but not greater than necessary, to reflect the gravity of Zapata's illegal conduct, justly punish him, and to deter him and others from engaging in similar conduct. The United States also requests this Court order Zapata to pay restitution to the Internal Revenue Service in the amount of $2,584,602.97.

## I. BACKGROUND

### A. Zapata Set up a Shell Company and Used the Shell Company to Commit Fraud.

To hide their scheme, the conspirators set up six shell companies. Zapata opened one such shell company. He opened ODZ Renovations, Inc. ("ODZ.") Zapata created an email address for ODZ. (PSR ¶87.) He opened at least three separate bank accounts in ODZ's name and used these bank accounts to cash checks. (PSR ¶65.)

ODZ operated in the conspiracy for approximately twelve months spanning 2020 and 2021. (PSR ¶22.) During this short period, Zapata cashed approximately $10,244,822 through his shell company bank accounts. (PSR ¶68.)

**B. In 2020 and 2021, Zapata Transported Approximately $10.2 Million in Cash around Orlando and Facilitated the Employment of Undocumented Workers.**

Zapata and his conspirators ran an unlicensed check cashing and cash courier service business that unlawfully cashed approximately $89 million for subcontractors working in the construction industry. To operate the unlicensed check cashing and cash courier service business, Zapata and his conspirators would tell subcontractors to have checks written in the name of a shell company, like ODZ. Zapata deposited checks written in ODZ's name into ODZ's bank accounts and then withdrew cash; he often made large cash withdrawals from multiple bank accounts in a single day. (*See* PSR ¶66.) Zapata withdrew over $10 million in cash from ODZ's bank accounts; Zapata went to banks to withdraw large amounts of cash and drove it around Orlando and the surrounding areas multiple times a week for about twelve months.

Zapata took the cash he withdrew and gave it to his conspirators, Iris Yaneth Villafranca or Maryuri Zelaya Artica, at either Villafranca or Zelaya Artica's home. (*See* PSR ¶48.) After Zapata gave Villafranca and Zelaya Artica the cash, Villafranca and Zelaya Artica counted it, portioned it out into envelopes, and wrote the name of the recipient on the outside of the envelope. Zapata then picked up the envelopes and delivered them to subcontractors. (PSR ¶49.)

Zapata met the subcontractors in different places in and around Orlando and gave them the envelopes filled with cash. By paying millions of dollars in cash to workers, Zapata facilitated the employment of undocumented workers. (PSR ¶50.)

**C. Zapata Defrauded Workers' Compensation Insurance Companies.**

For the scheme to work, the conspirators had to apply for and obtain worker's compensation insurance in the names of the shell companies. Zapata submitted a false workers' compensation insurance application to a workers' compensation insurance company in ODZ's name. (*See* PSR ¶89.) Zapata "rented," or let subcontractors use, ODZ's workers' compensation insurance policy for a fee. By renting workers' compensation coverage from the scheme, the subcontractors were able to get jobs that they were otherwise unable to get from contractors, pay less for workers' compensation insurance, and disclaim responsibility for ensuring adequate workers' compensation insurance had been obtained.

**D. Zapata Defrauded the United States out of Approximately $2 Million in Employment Taxes.**

Zapata filed false and misleading tax documents with the IRS, and he hid the fact that he and his seven conspirators were using the shell companies to pay millions of dollars in cash wages and not paying employment taxes. Zapata failed to pay $2,584,602.97 in taxes over to the IRS. (PSR ¶105.)

Zapata went to Michael Mayorga, the scheme accountant, to have him do ODZ's books and records. On March 22, 2021, Zapata signed his Form 1040 for the 2020 tax year. (PSR ¶103.) Zapata did not file a federal business tax return for ODZ for tax year 2021, and he did not file his individual income taxes for that tax year. (PSR ¶104.)

## II. PROCEDURAL HISTORY

On April 23, 2025, Zapata was charged by Indictment with one count of conspiracy to operate an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 371, 1960(b)(1)(A), 1960(b)(1)(B), and 1960(b)(1)(C); and one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. (Doc. No. 25.) Zapata pleaded guilty to Count One of the Indictment (conspiracy to operate an unlicensed money transmitting business) and he stipulated to all the conduct described in Count Two. (PSR ¶10-12.) This Court accepted Zapata's guilty plea on October 9, 2025. (Doc. No. 135.)

## III. SENTENCING GUIDELINES

### A. Guidelines Calculation

The Guidelines are "the starting point and the initial benchmark" for sentencing and are designed to aid district courts in determining a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). They are, however, only advisory. If a district court "decides that an outside-Guidelines sentence is warranted," the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 50. Even so, the Eleventh Circuit has recognized the Guidelines provisions for tax offenses are the product of "empirical analysis" and reflect the relevant "legislative history supporting higher sentences for white-collar crime." *See United States v. Snipes*, 611 F.3d 855, 870 (11th Cir. 2010); *see also United States v. Howard*, 28 F.4th 180, 205 (11th Cir. 2022) ("[A]

major variance from the guidelines range 'should be supported by a more significant justification than a minor one,' and a court must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" (quoting *Gall*, 552 U.S. at 50)).

The United States calculates Zapata's Offense Level as Follows:

| Offense Level for *Klein* Conspiracy | |
| --- | --- |
| Base offense level (2T1.9(a)(1)): | |
| Tax loss - between $1.5 million and $3.5 million (2T4.1(I)): | + 22 levels |
| Failure to report more than $10,000 from criminal activity (2T1.1(b)(1)): | + 2 levels |
| Sophisticated means enhancement (2T1.1(b)(2)): | + 2 levels |
| **Subtotal:** | 26 levels |
| Grouping enhancement – 2 Units (3D1.4) | + 2 levels |
| Acceptance of Responsibility reduction (3B1.1): | -3 levels |
| "Zero Point Offender" reduction (4C1.1): | -2 levels |
| **Total:** | **23 levels** |


| Offense Level for Money Transmitting Conspiracy | |
| --- | --- |
| Base offense level (2S1.3(a)(2)): | +6 levels |
| Cash withdrawals – between $9.5 million and $25 million (2B1.1(b)(1)(K)): | + 20 levels |
| Proceeds and promotion of unlawful activity (2S1.3(b)(1)(A)): | + 2 levels |
| **Subtotal:** | 28 levels |
| Grouping enhancement – 2 Units (3D1.4) | + 2 levels |
| Acceptance of Responsibility reduction (3B1.1): | -3 levels |
| "Zero Point Offender" reduction (4C1.1): | -2 levels |
| **Total:** | **25 levels** |

Zapata has no significant criminal history, which, combined with an Offense Level of 25, yields a Guidelines range of 57 months to 71 months, though he is capped statutorily at 60 months' imprisonment.

**B. Recommended Sentence**

The United States recommends this Court sentence Zapata to a Guidelines term of imprisonment of 60 months, followed by a term of supervised release if he is not

removed by immigration authorities. Additionally, the United States requests that this Court order Zapata to pay the agreed $2,584,602.97 in restitution. (Plea Agreement, Doc. No. 130.)

In determining the appropriate sentence, the Court must consider the factors set forth in 18 U.S.C. § 3553(a). *See Howard*, 28 F.4th at 204. The government respectfully submits that a Guidelines range term of imprisonment is sufficient, but not greater than necessary, to address these sentencing considerations.

**IV.    ARGUMENT - 18 U.S.C. § 3553(a) FACTORS**

After calculating the Guidelines range, a sentencing judge must weigh the factors set forth in 18 U.S.C. § 3553(a) and fashion a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). The factors set forth in 18 U.S.C. § 3553(a) include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (5) the Guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar crimes; and (7) the need to provide restitution to any

victim of the offense. 18 U.S.C. § 3553(a).  The factors most relevant to this case are discussed below.

**A. 18 U.S.C. § 3553(a)(1) – Nature and Circumstances of the Offense and History and Characteristics of the Offender.**

A "money transmitting business" is a business that, among other things, cashed checks and transported cash. To legally operate as a money transmitting business, the business was required to register with the appropriate state and federal authorities.  18 U.S.C. § 1960; *see United States v. Talebnejad*, 460 F.3d 563, 565 (4th Cir. 2006); *United States v. $50,000 in United States Currency*, No. 2:20-CV-36-FTM-38MRM, 2020 WL 3882962, at *1 (M.D. Fla. June 24, 2020), *report and recommendation adopted*, No. 2:20-CV-36-FTM-38MRM, 2020 WL 3868836 (M.D. Fla. July 9, 2020) (discussing forfeitability of property, and noting that "money transmitting" includes "transferring funds on behalf of the public by any means including, but not limited to, transfers within this country by courier").  "Section 1960 was enacted by Congress 'in response to concerns that nonbank financial institutions (money transmitters, check cashers, and foreign exchange dealers) were increasingly being used to transfer the proceeds of illegal activity.'"  *United States v. $829,422.42 in U.S. Currency*, No. 3:08–cv–00914 (DJS), 2013 WL 2446486, *8 (D. Conn. June 5, 2013).  This is precisely the conduct that Zapata engaged in.  Zapata conspired to operate an unlicensed money transmitter business, and he worked to defeat the government's important interests in monitoring transactions withing the federal banking system.

Moreover, tax crimes are serious offenses because they harm every honest, taxpaying citizen. *See* Introductory Commentary, USSG, Chapter Two, Part T. ("The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws.")

The need to promote respect for the law and provide deterrence is extremely high in employment tax cases; the failure to pay employment taxes under any circumstances threatens the integrity of the Social Security, Medicare, and federal income tax systems. A 2025 Report on the Status of the Social Security and Medicare Programs found that the Social Security retirement trust and Medicare's Part A Trust will be depleted by 2033.[1] These programs are funded by the very payroll taxes Zapata agreed he failed to pay. The gap in funding for these programs is, in part, a result of individuals abusing the trust the law places in them to withhold payroll taxes from paychecks and turn over withholdings to the government. The IRS estimates that the net tax gap for tax year 2022 was $606 billion, and the net tax gap for employment taxes was projected to be $119 billion.[2] The projected net tax gap for 2021, a year

---

[1] *See A Summary of the 2025 Annual Reports*, Status of the Social Security and Medicare Programs, pg. 7, *available at* https://www.ssa.gov/oact/TRSUM/tr25summary.pdf.

[2] *Federal Tax Compliance Research: Tax Gap Projections for Tax Year 2022*, Publication 5869 (Rev. 10-2024), pg. 4-9, *available at* https://www.irs.gov/pub/irs-pdf/p5869.pdf.

during which Zapata and his conspirators failed to pay employment taxes over to the United States, was $625 billion.[3]

According to the U.S. Sentencing Commission, the median loss for tax fraud cases in fiscal year 2024 was $491,302.[4] Only 20.5% of cases involved loss amounts greater than $1.5 million. *Id.* Zapata is responsible for an actual loss five times the median loss for tax fraud cases in 2024. One of the top five districts for tax fraud offenses in 2024 was the Middle District of Florida. These figures are serious, and such severe conduct demands a commensurate sentence.

Zapata's conduct was not confined to a single, isolated event, or a single tax year. It was an ongoing, deliberate course of conduct. Zapata went to different banks multiple times a week to withdraw cash and move it around Orlando. And Zapata caused considerable harm to the Treasury; the total tax loss associated with Zapata's criminal conduct is $2,584,602.97.

Zapata's Guidelines range credits him for his status as a first-time offender and accepting responsibility for his actions. Nothing in Zapata's history or characteristics counsels against a Guidelines sentence.

---

[3] *Federal Tax Compliance Research: Tax Gap Projections for Tax Years 2020-2021*, Publication 5869 (10-2023), pg. 4, *available at* https://www.irs.gov/pub/irs-prior/p5869--2023.pdf.
[4] *Quick Facts: Tax Fraud*, United States Sentencing Commission, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Tax_Fraud_FY24.pdf

**B. 18 U.S.C. § 3553(a)(2)(A) – Need for Sentence Imposed to Reflect Seriousness of Offense, Promote Respect for the Law, and Provide Just Punishment.**

Zapata's actions cost the American taxpayers millions of dollars. A period of incarceration is necessary to show Zapata and others like him that operating an off-the-books payroll scheme has serious consequences.

The Sentencing Commission commented in Chapter Two that "[t]ax offenses, in and of themselves, are serious offenses." USSG § 2T1.1, comment (backg'd). Tax crimes are serious because they harm every honest, taxpaying citizen. A Guidelines term of imprisonment will reflect the seriousness of Zapata's offense, promote respect for the law, and provide just punishment.

**C. 18 U.S.C. § 3553(a)(2)(B) and (C) – Need for Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant.**

It is important to specifically deter Zapata from engaging in further acts of fraud. Zapata was a shell company owner in a scheme that deprived the United States of approximately $38 million in Social Security, Medicare, and federal income taxes. Zapata chose to defraud the United States Treasury for years.

General deterrence is similarly crucial for white collar offenses like this one. *See Snipes*, 611 F.3d at 872 (acknowledging importance of deterrence while affirming sentence in tax case). As the Eleventh Circuit stated in vacating as unreasonable a seven-day sentence for a white-collar defendant:

> Because economic and fraud-based crimes are "more rational, cool, and calculated than sudden crimes of passion or opportunity," these crimes are

"prime candidate[s] for general deterrence." Stephanos Bibas, *White–Collar Plea Bargaining and Sentencing After Booker*, 47 Wm. & Mary L.Rev. 721, 724 (2005). Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment. Yet the message of [defendant]'s 7–day sentence is that would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty.

*United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).

Deterrence occupies a particularly important role in sentencing for criminal tax offenses because tax prosecutions are relatively rare. *See* Introductory Commentary, USSG, Chapter Two, Part T ("Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these Guidelines.") Recognizing the infrequency of tax prosecutions, the Fourth Circuit has explicitly endorsed the importance of incarcerating tax evaders as a means of general deterrence:

Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

*United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010).

For years, Zapata engaged in a scheme to enrich himself by operating an off-the-books payroll and cheating the Internal Revenue Service. Fraud schemes like this one undermine the trust essential to our nation's tax laws. A Guidelines sentence will send a clear message that those who choose to commit economic crimes will have serious consequences.

## V. RESTITUTION

The IRS should be made whole for the actual tax loss it sustained as the result of Zapata's fraudulent conduct. *See* 18 U.S.C. § 3663(a)(3); *see also, e.g., United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) ("Restitution is desirable but so is the deterrence of white-collar crime (of central concern to Congress), the minimization of discrepancies between white-and-blue-collar offenses, and limits on the ability of those with money or earning potential to buy their way out of jail.").

The United States requests that the Court order Zapata to pay the restitution that Zapata agreed to pay in his plea agreement. Specifically, the United States requests the Court order Zapata to pay restitution to the Internal Revenue Service in the amount of $2,584,602.97. The United States requests the Court order that figure as restitution in this case, and that it be ordered joint and severally with the codefendants who have pleaded guilty in this matter: Iris Yaneth Villafranca, Michael Mayorga, Mario Lisandro Flores Moradel, and Francisco Alvarez, Jr.

## VI. CONCLUSION

The United States requests this Court to sentence Osman Donaldo Zapata to a 60-month term of imprisonment, followed by a term of supervised release, and order Zapata to pay restitution as set forth above.

GREGORY W. KEHOE
United States Attorney

/s/Kavitha Bondada
SEAN BEATY
Senior Litigation Counsel
Tax Section, Criminal Division
Department of Justice
Virginia Bar No. 67941

KAVITHA BONDADA
Trial Attorney
Tax Section, Criminal Division
Department of Justice
Texas Bar No. 24085815
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
Phone: (202) 616-2717
Email: sean.p.beaty@usdoj.gov
Email: kavitha.bondada@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2026, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which automatically generated a

Notice of Electronic Filing to all counsel of record.

/s/Kavitha Bondada
KAVITHA BONDADA